IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

TRENELL DAVID MURPHY,
   *Defendant*.

Civil Action No. ELH-11-1834
Criminal No. ELH-09-0098

**MEMORANDUM OPINION**

In this case, the Court is called upon to resolve a petition for relief filed by Trenell Murphy, pursuant to 28 U.S.C. § 2255, and as amended through counsel. *See* ECF 39, 55, 66.[1] The petition is rooted in Murphy's conditional plea of guilty entered on July 7, 2009, to the charge of possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). *See* Plea Agreement (ECF 18).[2]

Pursuant to the terms of Murphy's plea agreement, he reserved the right to appeal the pretrial ruling of Judge Benson Legg,[3] denying Murphy's motion to suppress evidence recovered from the warrantless search of his truck. *Id.* at ¶ 11.[4] On October 2, 2009, Judge Legg sentenced Murphy to 20 years' imprisonment. *See* ECF 23. Thereafter, Murphy timely appealed to the United States Court of Appeals for the Fourth Circuit. *See* ECF 25. On December 21, 2010, the

---

[1] Murphy initially filed his petition without the benefit of counsel. *See* ECF 39, 42.

[2] At the relevant time, the government was represented by AUSA Philip Jackson, who has since been appointed to the Circuit Court for Baltimore City.

[3] The case was reassigned from Judge Legg to me on June 26, 2012.

[4] The police had a warrant to search Murphy's home, but not his vehicle.

Fourth Circuit affirmed Murphy's conviction in an unpublished, per curiam opinion. *See United States v. Murphy*, 405 F. App'x 791 (4th Cir. 2010).

This petition followed, which the government opposes. *See* ECF 68. No hearing is needed to resolve the dispute. *See* Local Rule 105.6. For the reasons set forth below, I will deny the petition.

## I. Factual Summary[5]

On the evening of February 19, 2009, Baltimore City police set up surveillance in the vicinity of 3041 Presstman Street in Baltimore in response to information from a confidential informant indicating that a known drug trafficker resided at that address. During the course of their surveillance, police observed Murphy leave 3041 Presstman Street and place a white plastic bag in a black Chevrolet truck bearing Maryland registration 88V422. According to Motor Vehicle Administration records, that vehicle belonged to Murphy. The police then followed Murphy as he drove off in his vehicle. Murphy stopped his vehicle, discarded the white plastic bag into the gutter, and drove away.[6] Police quickly recovered the discarded bag and observed that it contained several items covered by a white powder residue, suspected to be cocaine.

In the early hours of February 20, 2009, the police obtained a search warrant for 3041 Presstman Street, where Murphy resided. At about 1:45 a.m. on that date, the police executed the search warrant and recovered approximately $12,000 in U.S. currency from the house as well as the keys to Murphy's black truck. The police arrested Murphy and subsequently looked in the

---

[5] The facts regarding Murphy's criminal activity are generally derived from the facts set forth in Murphy's plea agreement, to which he stipulated (ECF 18); from Judge Legg's Memorandum Opinion of July 22, 2009 (ECF 21); as well as the guilty plea colloquy (ECF 68-7, Gov't. Ex. G). However, Murphy now contests certain portions of the facts to which he had stipulated.

[6] As discussed, *infra*, Murphy insists that he never moved his vehicle on the night in question and claims that, to verify his assertion, he asked his trial counsel to obtain the video from the blue light camera located at the corner of Presstman Street.

covered truck bed, where they saw items similar to the one that Murphy had previously discarded. ECF 21 at 4. The police then searched the truck bed and recovered about 40 kilograms of cocaine with an estimated wholesale value of approximately $1,000,000. ECF 11 at 2; ECF 18 at 9; ECF 21 at 4. After securing the items, the police obtained a search warrant for the vehicle.

Murphy's attorney filed a motion to suppress. ECF 11. Judge Legg held a pretrial motion hearing on June 30, 2009, at which he considered Murphy's motion to suppress the evidence recovered pursuant to the warrantless search of Murphy's truck on February 20, 2009. ECF 11, ECF 15. The Court denied the suppression motion at the hearing and then issued a Memorandum Opinion on July 22, 2009, memorializing its reasons. *See* ECF 21.[7]

In the meantime, by plea agreement dated July 1, 2009, and signed by Murphy on July 6, 2009, Murphy agreed to plead guilty to Count One of the Indictment, charging him with possession with intent to distribute five or more kilograms of cocaine. *See* Plea Agreement (ECF 18), ¶1. By statute, the maximum period of incarceration was a term of life imprisonment, with a mandatory minimum term of ten years' incarceration. *Id.* ¶ 3. Because the offense involved at least five but less than fifteen kilograms of cocaine, the Base Offense Level was a 34. But, the plea agreement provided that, if Murphy was found to be a "career offender;" as defined in U.S.S.G. § 4B1.1, the Base Offense Level would increase to 37 (before deductions). *Id.* ¶ 6(a). The Government agreed to recommend a sentence of incarceration within the applicable guideline range. *Id.* ¶ 9.

---

[7] Judge Legg stated that the "sole issue" concerned the warrantless search of the vehicle. ECF 21 at 1.

Under the terms of the plea agreement, the Government agreed to recommend a "two-level reduction of [Murphy's] adjusted offense level." *See id.* ¶ 6(b). However, the plea agreement stipulated that there was no agreement as to Murphy's criminal history and that Murphy's offense level and criminal history category could increase if Murphy was determined to be a "career offender." *See id.* Moreover, the plea agreement provided that a determination that Murphy is a "career offender" could not form the basis for Murphy to withdraw his guilty plea. *See id.* As noted, Murphy also reserved the right to appeal the ruling denying the motion to suppress.

The plea agreement also contained as Attachment A an "Agreed Statement of Facts." As discussed, *infra*, it provided that, on the evening of February 19, 2009, defendant left his residence and drove away in a black Chevrolet truck, followed by detectives, who saw him discard a white plastic bag into the street. The bag was quickly recovered and found to contain items with a white residue, suspected to be cocaine. *See* ECF 18 at 8-9.

During the rearraignment on July 7, 2009, Judge Legg thoroughly reviewed the plea agreement with Murphy. *See* ECF 68-7. Judge Legg carefully reviewed with Murphy the implications of career offender status, and indicated that the determination would not be made until sentencing. Under oath, Murphy advised that he understood. *Id.* at 16.

At sentencing on October 7, 2009, Judge Legg determined that Murphy qualified as a career offender within the meaning of the federal sentencing guidelines. After two deductions under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, Murphy's final offense level was 35, with a criminal history category of VI. Murphy's guidelines range called for a sentence of between 292 and 365 months imprisonment. ECF 24. However, the Court sentenced Murphy to 240 months' imprisonment. *See* ECF 23 at 2–3; ECF 24.

As noted, on December 21, 2010, the Fourth Circuit affirmed Murphy's conviction in an unpublished, per curiam opinion. *See* ECF 33, 34. The mandate issued on January 12, 2011. ECF 34.

On July 1, 2011, Murphy timely filed a pro se "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("2011 Petition," ECF 39). In the 2011 Petition, Murphy asserted: (1) "[C]ongress exceeded its powers by enacting 21 U.S.C. § 841(a)(1)"; (2) law enforcement violated his Fourth Amendment rights by unlawfully seizing evidence from his vehicle without a warrant, and creating exigent circumstances; and (3) he did not receive effective assistance of counsel from his court-appointed attorney, M. Gordon Tayback, as guaranteed by the Sixth Amendment, because his trial counsel allegedly "failed to test [an informant's] status depriving Murphy [of] the right to call the person at the suppression hearing"; failed to challenge the validity of a post-arrest search warrant; and failed to investigate the validity of Murphy's prior convictions. *See* ECF 39 at 5–6.[8]

Murphy filed a 55-page memorandum in support of his 2011 Petition on August 11, 2011 ("2011 Memorandum," ECF 42). In the 2011 Memorandum, Murphy again claimed Congress lacked the authority to enact 21 U.S.C. § 841(a)(1), *see* ECF 42 at 3–47, and that law enforcement unconstitutionally seized evidence from his vehicle. *See id.* at 48–49. In addition, Murphy alleged that Tayback was unable to investigate properly Murphy's case due to Tayback's overwhelming caseload. *See id.* at 49–56. Murphy also complained that his attorney "never once challenged the law enforcement's self-created exigency" or the confidential informant. *Id.* at 3. On April 23, 2012, the Government responded to Murphy's 2011 Petition. *See* ECF 48.

---

[8] M. Gordon Tayback was an experienced criminal defense attorney in Baltimore. *See* ECF 68-7 at 14. He died in April 2013 at the age of 64.

Attorney Michael E. Marr entered his appearance on behalf of Murphy on June 18, 2012. *See* ECF 49. Marr requested an extension of thirty days to amend the 2011 Petition. *See* ECF 50. In particular, the request for an extension stated: "The automobile search exception and possible *coram nobis* issues with [Murphy's] predicate offenses" would be the focus of the prospective amendment. *See id*. On June 20, 2012, the Court granted Murphy's request for an extension. *See* ECF 51.

On August 7, 2012, Murphy filed an "Amended Memorandum in Support of Petition for Relief Pursuant to the Provisions of 28 U.S.C. § 2255" ("2012 Memorandum," ECF 55). In the 2012 Memorandum, Murphy expressed his desire to "remove two of the three contentions" raised in the 2011 Petition: (1) "the power of Congress to enact the controlled substance act"; and (2) "the constitutionality of the warrantless search of [Murphy's] vehicle." *Id.* at 1. Instead, Murphy indicated that he sought relief based solely on his claim that he did not receive effective assistance of trial counsel. *Id*.

In particular, Murphy asserted, for the first time, that his ineffective assistance of counsel claim would focus primarily on his "counsel's failure to subpoena and obtain the results of a blue light camera for surveillance of the neighborhood within which [Murphy's] mother's home was located…." *Id*. at 1.[9] In Murphy's estimation, the surveillance camera would have revealed that Murphy never left 3401 Presstman Street in his black truck on February 19, 2009, as the police claimed, and thus later that night he could not have been the one who discarded a white plastic bag containing items covered with cocaine residue. As a result, Murphy claims that the police lacked probable cause for the search warrant and ensuing search of the truck on February 19, 2009, because the searches were predicated, *inter alia*, on the claim by the police that they

---

[9] The Government proffers that Murphy is referring to a closed-circuit camera operated by the Baltimore City Police Department under the "Citywatch" program. *See* Opp. at 3.

witnessed Murphy leave 3401 Presstman Street in his truck. *See id.* at 1–2. Moreover, Murphy requested time to obtain the results of the "blue light camera" for the date and location in question, and to determine whether there was any potential for *coram nobis* relief. *See id.* at 2. On August 27, 2012, the Court granted Murphy's request. *See* ECF 56.

By letter of October 9, 2012, Murphy's attorney sought an additional 90 days to obtain the "'blue light' camera video, explaining that "it can be a long arduous process." ECF 59. With the consent of the Government, the Court granted another extension. ECF 60. Once the information was obtained, a briefing schedule was established. *See* ECF 61, 62, 64, 65.

On May 28, 2013, Murphy filed a "Memorandum in Support of Postconviction Relief Pursuant to the Provisions of 28 U.S.C. § 2255" ("2013 Memorandum," ECF 66). In his 2013 Memorandum, Murphy (1) reiterated his contention from the 2012 Memorandum that he received ineffective assistance of counsel due to his counsel's failure to subpoena the "blue light camera" surveillance video; (2) renewed his contention from the 2011 Petition that his trial counsel was ineffective because he failed to challenge Murphy's prior convictions or seek *coram nobis* relief; and (3) asserted that, prior to the execution of the plea agreement, he was not advised by his trial counsel that his prior convictions could cause him to be classified as a career offender, which would lead to an increased sentence. *See id.* The Government filed a "Response to Petitioner's Memorandum in Support of Postconviction Relief Pursuant to the Provisions of 28 U.S.C. § 2255" ("Opp.," ECF 68), along with several exhibits, including a copy of the plea agreement and a transcript of Murphy's Rule 11 Hearing on July 7, 2009. ("Transcript").

## Contentions

As noted**,** Murphy asserts that he received ineffective assistance of trial counsel. In sum, Murphy contends that his defense attorney erred in three ways: (1) by failing to obtain

surveillance footage for the night of February 19, 2009, from the blue light camera in the vicinity of Murphy's residence, as this would have established that the vehicle "remained stationary" on the night in question, and thus the police unlawfully searched Murphy's truck; (2) by failing to file coram nobis challenges to Murphy's prior convictions, which affected his sentencing guidelines calculation; and (3) by failing to advise Murphy that his criminal history could cause him to be classified as a career offender.

The Government counters that the blue light camera claim and career offender claims are untimely. In any event, the Government argues that all of the claims lack merit.[10]

## Discussion

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." One well-recognized basis for relief under § 2255 is a violation of the Sixth Amendment right to effective assistance of competent counsel. *See generally Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-

---

[10] As noted, in the 2011 Petition and the 2011 Memorandum, Murphy asserted that he received ineffective assistance of counsel in three other ways: (1) his counsel "failed to test [an informant's] status depriving Murphy the right to call the person at the suppression hearing"; (2) his counsel failed to argue the validity of a post-arrest search warrant for the truck; and (3) his counsel was unable to properly investigate Murphy's case due to the attorney's overwhelming caseload. In the 2012 Memorandum, however, Murphy did not renew these contentions.

prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See, e.g.*, *Chaidez v. U.S.*, ____ U.S. ____, 133 S. Ct. 1103, 1107–8 (2013); *Lafler*, 132 S. Ct. at 1384; *U.S. v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). First, the petitioner must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," *Strickland*, 466 U.S. at 687, and was "below an objective standard of reasonableness," measured by "prevailing professional norms." *Id.* at 688. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689). Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Strickland,* 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697; *see Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable").

I conclude that Murphy is not entitled to the requested relief for ineffective assistance of counsel, because he is unable to demonstrate that counsel's performance was constitutionally deficient.

As an initial matter, Murphy's assertions with respect to his counsel's alleged failure to subpoena the footage of the "blue light camera" located near 3041 Presstman Street, and his counsel's alleged failure to advise him that his criminal history could cause him to be designated

as a career offender, are time-barred.[11] Neither contention was included in Murphy's 2011 Petition. Section 2255(f) provides that a one-year limitation period applies to motions brought pursuant to 28 U.S.C. § 2255. The limitations period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Federal Rule of Civil Procedure 15(c)(2) is applicable here. *See United States v. Pittman,* 209 F.3d 314, 316–17 (4th Cir. 2000). It provides that an amendment filed after the 28 U.S.C. § 2255 limitations period relates back to an original timely motion only if the two claims "arose out of the [same] conduct, transaction, or occurrence." However, "[a]n amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleadings set forth." *Mayle v. Felix,* 545 U.S. 644, 664 (2005); *see also Pittman,* 209 F.3d at 318 (holding that amendment to timely 28 U.S.C. § 2255 motion does not relate back if it arises "from separate occurrences of 'both time and type'") (citing *United States v. Craycraft,* 167 F.3d 451, 457 (8th Cir. 1999)).

---

[11] The Government does not dispute, and I agree, that Murphy's contention with respect to his trial counsel's failure to file coram nobis challenges to his prior convictions was timely raised in Murphy's 2011 Petition, filed August 11, 2011. I address the merits of this contention, *infra*.

Murphy appealed his conviction to the United States Court of Appeals for the Fourth Circuit, which affirmed Murphy's conviction on December 21, 2010. As noted, the mandate issued on January 12, 2011. ECF 34. Murphy did not seek a writ of certiorari to the Supreme Court. Thus, Murphy's conviction became final 90 days after the mandate was issued, when his time to seek certiorari expired. *See* Sup. Ct. Rule 13; *Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that if no petition for a writ of certiorari was filed, conviction becomes final for purposes of the 28 U.S.C. § 2255 limitations period when the time to file a petition for a writ of certiorari expires).

Murphy timely filed the 2011 Petition on July 1, 2011, and his 2011 Memorandum on August 11, 2011. However, Murphy did not raise any contention with respect to his counsel's failure to obtain the footage from the surveillance camera until the 2012 Memorandum was filed on August 7, 2012, several months after the limitations period had expired under 28 U.S.C. § 2255. And, it was not until the 2013 Memorandum, filed on May 28, 2013, that Murphy asserted his complaint with respect to his counsel's failure to advise him that his criminal history could impact his sentence. That filing occurred more than a year after the 28 U.S.C. § 2255 limitations period had ended. Consequently, these contentions can only be considered if they relate back either to the 2011 Petition or to the 2011 Memorandum under Federal Rule of Civil Procedure 15(c)(2).

Murphy's contentions with respect to his counsel's failure to obtain the video from the blue light camera and with respect to his counsel's failure to advise him that his criminal history could impact his sentence do not "ar[i]se out of the [same] conduct, transaction, or occurrence" as the allegations made in the 2011 Petition and the 2011 Memorandum. As noted, in the 2011 Petition and in the 2011 Memorandum, Murphy alleged: (1) Congress did not have the authority

to enact 21 U.S.C. § 841(a)(1); (2) evidence was unlawfully seized from his home and vehicle; (3) defense counsel failed to seek the disclosure of an informant; (4) defense counsel failed to argue the validity of a post-arrest search warrant; (5) defense counsel failed to investigate the validity and the legality of his prior convictions; and (6) his attorney was unable to investigate properly Murphy's case due to defense counsel's overwhelming caseload.

Although the 2011 Petition and the 2011 Memorandum contain several allegations regarding ineffective assistance of trial counsel, the facts underlying these allegations are completely unrelated to Murphy's later claims that his defense lawyer failed to subpoena the video from the blue light camera and failed to fully advise Murphy of the consequences of his plea. *See Evans v. United States*, 2007 WL 2572432, at *3 (D. Md. Sept. 4, 2007) (holding that petitioner's motion to amend his 28 U.S.C. § 2255 motion does not relate back to the original motion because the original motion alleged ineffective assistance of counsel with regard to sentencing and the amended motion alleged ineffective assistance of counsel with regard to the plea). Accordingly, Murphy's contentions are time-barred with respect to his counsel's alleged failure to obtain the video from the "blue light camera," and with respect to his counsel's alleged failure to advise him that his criminal history could impact his sentence.

Even assuming, *arguendo*, that Murphy's contentions are not time-barred, Murphy would still not be entitled to habeas relief. I address the merits of Murphy's claims, in turn.

*A. The Failure to Subpoena Video Footage from the "Blue Light Camera"*

According to Murphy, the search warrant for Murphy's residence was predicated, *inter alia*, on the police representation that, on the evening of February 19, 2009, they witnessed Murphy leave 3401 Presstman Street in his Chevy truck and saw him discard a bag that they retrieved, which contained suspected cocaine residue. Murphy maintains that, had his trial

counsel subpoenaed the video footage of the blue light camera located in the vicinity of 3401 Presstman Street, this footage would have revealed that Murphy never left 3401 Presstman Street in his black truck on February 19, 2009, and thus never discarded a white plastic bag containing items covered with cocaine residue. In turn, this evidence would have established a lack of probable cause for the search warrant, because the truck was never moved on that date. It follows, he argues, that the evidence recovered during the subsequent search of the truck should have been suppressed.

Murphy insists that he told his defense lawyer about the blue light camera. However, Murphy has failed to provide any evidence indicating (1) that a blue light camera existed in the vicinity of 3401 Presstman Street at the relevant time; (2) that Murphy asked his attorney to investigate such video footage; (3) that the video footage was exculpatory; or (4) that Tayback did not investigate the video (if any) from the blue light camera.[12] Therefore, Murphy has failed to meet his burden with respect to his claim regarding the "blue light camera." *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) ("Because the proceeding under 28 U.S.C.§ 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish by a preponderance of evidence that he did not intelligently waive his right to assistance of counsel."); *United States v. Rogers*, 2013 WL 5740476, at *2 (D. Md. Oct. 22, 2013) ("In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence.").

Moreover, at the Rule 11 guilty plea proceeding held on July 7, 2009, Murphy expressly indicated, under oath, that he carefully reviewed the Statement of Facts contained in Attachment

---

[12] Apparently, even if there were video footage, any blue light camera footage would have been destroyed in the ordinary course. *See* ECF 68 n.8.

A to the plea agreement and, with the exception of a typographical correction of an address, he agreed that the Statement of Facts was true, correct, and accurate. *See* ECF 68-7, Gov't Ex. G (Rule 11 transcript), at 5-6. Notably, the Statement of Facts provided that Murphy drove the truck from the area in question on February 19, 2009, and that he discarded the bag that the police subsequently recovered. *See* ECF 18 at 8 (Attachment A to Plea Agreement, titled "Agreed Statement of Facts"). This directly conflicts with Murphy's current claim that he did not drive the vehicle that night.

Put another way, Murphy's Petition contradicts his sworn testimony during the Rule 11 hearing. "'[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity[.]'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Further, as the *Lemaster* Court said, *id.*: "[I]n the absence of extraordinary circumstance, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" (citations omitted).

*B. The Alleged Failure of Counsel to Advise Murphy of his Potential Sentence as a Career Offender*

Murphy contends that his defense counsel failed to advise him that if he were classified as a "career offender" under the federal sentencing guidelines, he could receive an increased sentence. Contrary to Murphy's assertion, however, the plea agreement that Murphy signed clearly stated that (1) no determination had been made with respect to whether Murphy qualified as a "career offender" under the federal sentencing guidelines; and (2) if Murphy were determined to be a "career offender", then his offense level would increase to a 37 (before two deductions for acceptance of responsibility). *See* Plea Agreement, ECF 18, ¶ 6(b). In signing the plea agreement, Murphy acknowledged that he "carefully reviewed every part of [the plea

agreement] with [his] attorney." *Id.* at 9. Moreover, Murphy's attorney also signed the plea agreement and, in doing so, acknowledged that he had "carefully reviewed every part of" the plea agreement with Murphy. *Id.*

In addition, as indicated, Judge Legg conducted a thorough guilty plea hearing on July 7, 2009, at which Murphy was sworn. *See* ECF 68, Gov't Ex. G (Rule 11 Transcript). Judge Legg carefully reviewed with Murphy that there was no agreement as to his criminal history, and that his criminal history could affect both his offense level and his criminal history category. *Id.* at 15. In addition, Judge Legg expressly reviewed the issue of career offender status and told Murphy: "[W]hether you are or are not a career offender has not yet been decided. And that is one of the decisions that I will make when sentencing time comes." *Id.* Then, Judge Legg again told Murphy: "[I]f you are a career offender, then your offense level goes up and your criminal history category is an automatic VI." *Id.* at 16. Murphy expressly responded that he understood. *Id.*

In sum, the record completely refutes Murphy's claim that he was not advised that he could be classified as a career offender. Murphy has patently failed to meet his evidentiary burden with respect to this claim. *See Miller*, 261 F.2d at 547.

### C. The Alleged Failure to File Coram Nobis Challenges

Murphy's final assertion is that he was awarded additional years as a career criminal solely because his trial counsel failed to file for *coram nobis* relief in the Maryland courts to address his prior convictions. Although Murphy alleges that "Coram Nobis relief was available to avert the career criminal sentence" he ultimately received, he does not supply any evidence indicating (1) that *coram nobis* relief was available to him; (2) that his counsel failed to investigate whether such relief was available to him; or (3) why he would have prevailed had

agreement] with [his] attorney." *Id.* at 9. Moreover, Murphy's attorney also signed the plea agreement and, in doing so, acknowledged that he had "carefully reviewed every part of" the plea agreement with Murphy. *Id.*

In addition, as indicated, Judge Legg conducted a thorough guilty plea hearing on July 7, 2009, at which Murphy was sworn. *See* ECF 68, Gov't Ex. G (Rule 11 Transcript). Judge Legg carefully reviewed with Murphy that there was no agreement as to his criminal history, and that his criminal history could affect both his offense level and his criminal history category. *Id.* at 15. In addition, Judge Legg expressly reviewed the issue of career offender status and told Murphy: "[W]hether you are or are not a career offender has not yet been decided. And that is one of the decisions that I will make when sentencing time comes." *Id.* Then, Judge Legg again told Murphy: "[I]f you are a career offender, then your offense level goes up and your criminal history category is an automatic VI." *Id.* at 16. Murphy expressly responded that he understood. *Id.*

In sum, the record completely refutes Murphy's claim that he was not advised that he could be classified as a career offender. Murphy has patently failed to meet his evidentiary burden with respect to this claim. *See Miller*, 261 F.2d at 547.

*C. The Alleged Failure to File Coram Nobis Challenges*

Murphy's final assertion is that he was awarded additional years as a career criminal solely because his trial counsel failed to file for *coram nobis* relief in the Maryland courts to address his prior convictions. Although Murphy alleges that "Coram Nobis relief was available to avert the career criminal sentence" he ultimately received, he does not supply any evidence indicating (1) that *coram nobis* relief was available to him; (2) that his counsel failed to investigate whether such relief was available to him; or (3) why he would have prevailed had

such challenges been filed. Murphy's mere allegations, without more, are insufficient to satisfy his burden of proving that he is entitled to habeas relief. *See Miller*, 261 F.2d at 547.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the Court is required to issue or deny a Certificate of Appealability ("COA") when it enters a final order adverse to the applicant. *See Jackson v. United States*, Civ. No. PJM-12-421, 2012 WL 869080, *1 (D. Md. Mar. 13, 2012). Murphy's Motion provides no basis for issuance of a COA. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also Rose v. Lee*, 252 F.3d 676, 683–84 (4th Cir. 2001). In my view, reasonable jurists would not find Murphy's claims debatable. Therefore, a Certificate of Appealability is DENIED.[13]

## Conclusion

For the foregoing reasons, the Court will deny the Petition. A separate Order follows.

Date: April 1, 2014        /s/
                           Ellen Lipton Hollander
                           United States District Judge

---

[13] Under F. R. Crim. P. 11(a), if the district court denies a COA, a party may seek a certificate from the Court of Appeals under Federal Rule of Appellate Procedure 2. However, the petitioner may not appeal the district court's denial of the COA.